*Exhibit A*

# PATRICK L. CORDERO, P.A.
_____ATTORNEYS AT LAW_____

MIRIAM MARENCO, ESQ.
MICHELLE NARGANES, ESQ.
GISELLE VELEZ, ESQ.
MARLENE M. SATO, ESQ.
AILEEN N. GONZALEZ, ESQ.

198 NW 37TH AVENUE MIAMI, FL33125
TELEPHONE: **(305) 445-4855**

November 17th, 2015

The Florida Bar
Attn: William W. Wilhelm, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Re:  Complaint by Cynthia Portales against Patricio L. Cordero
      The Florida Bar File No. 2016-70,269(11G)

Dear Mr. Wilhelm,

I have read the complaint by Cynthia Portales. I believe there are two issues.

1) I will address the first one which relates to a physical assault to Mrs. Portales by me, Patricio Cordero on October 9, 2015.

This never happened.

I have never assaulted anyone in my life, much less any clients.

On **Saturday, March 14, 2015**, my law firm was retained by Mrs. Portales for a bankruptcy filing. The bankruptcy case was filed on March 23, 2016. Case number 15-17331 RAM. This case was filed for the purpose of canceling the foreclosure sale date, April 5, 2015, and to participate in the Mortgage Modification Mediation Program (MMM Program) attempt a MMM program. The MMM program is a program within the bankruptcy proceeding allowing the debtor the opportunity of resolving their foreclosure. One of the resolutions in this program is negotiating a modification agreement with the Plaintiff of the foreclosure. The foreclosure case number is 08-027152 CA-01.

On **Saturday, August 15, 2015**, Nationstar Mortgage mailed a notification to our office and to our portal at a later date the decision that the MMM application was denied for several factors, which will be explained later.

On **Wednesday, September 23, 2015**, we finally met with Mrs. Portales explaining the outcome of the MMM program. By the way, since I have been practicing law, I have placed an internal office procedure of always meeting the client with a staff member, usually it is a paralegal, secretary, or staff. The purpose of this is to have them write notes and confirm the next process or action on their case. This was no different. I met Mrs. Portales with 3 staff members, one of them being my senior attorney associate. I explained the reasons for denial and what options she had.

By the MMM procedure, we had to remove the mortgage payment from the confirmed plan. This reduced her monthly payment to the Court, which at that time, she understood. We also opened a separate modification file. An appointment was set up for October 2, 2015, which then was reset by her for October 9, 2015. We explained that if she didn't find a solution for her foreclosure, she may lose her home. She was very negative about our conversation on this day, blaming everyone at the bank and her previous attorneys that no one was helping her and no one understood her case. At the end, she agreed to start this modification file.

On **Friday, October 9, 2015**, Mrs. Portales came in to our office to discuss this modification file. I met Mrs. Portales in an office with Ary, my lead modification specialist, and with Nurmis, my lead real estate paralegal. Thus, in this room, there were 4 persons, Mrs. Portales, Ary, Nurmis, and myself. Nurmis was in the room because Ary recently was hired for the modification position in which it used to be Nurmis's position, and she was following Ary to make sure Ary was doing her duties. Ary and Nurmis have been doing this since Ary started at my law firm.

From the onset, she was upset, crying, her voice at a high level of aggression, stating that again no one was helping her, that all of previous attorneys (prior to our representation) didn't know what they were doing and that all we (attorneys in general) do is charge fees and not do the work.

She also stated that we didn't do the work. I explained that it was not us to make a final decision. That we provided all the paperwork, motions, supporting documents to the Court and to the MMM program. Moreover, we had a mediation and presented more information at that time. Nationstar had enough information to submit a decision, in this case, it was a denial. At times when a Plaintiff doesn't have all the documents or don't have enough time to review, they submit an "impasse" decision.

She kept insisting that "no one is going to take her house away", and that she is not going to be homeless because of "stupid" attorneys. Moreover, she can't be on the street because she has a "special needs" child.

Finally, she stated that we were "unprofessional" for charging a modification process. I did charge her an initial flat $2,000.00 attorney fee for this work and she knew this on September 23, 2015. I explained that sometimes by submitting a new modification application, that banks may change their mind, change their criteria, and may offer a modification. In the past, I have been successful in obtaining modifications in this fashion, but she was adamant in that she was tired of paying attorneys since she fell behind on her regular mortgage payments. Keep in mind, this is from a client that apparently hasn't paid the regular mortgage since October of 2007.

At the end, after being with her for half hour, being rude and angry at us, admitted that she didn't have money to pay us.

I, trying to help her, and seeing a person that was desperate, I decided to give her a $500.00 discount and to pay the new fee of $1,500.00 over 5 months. After I said that, she smiled and stopped being emotionally upset. She said thank you to all of us in the room. I gave instructions to Ary regarding her case and I left the room and left the office. That was it.

After I left, Ary and Nurmis stayed with Mrs. Portales, going over the modification process. At the end, she scheduled another appointment with me for November 16, 2015. See Exhibit one Moreover, she also indicated that if she decided not continue with this process or the bankruptcy process, she would let Ary know.

On the following **Monday, October 12, 2015**, Ary returned her call and Mrs. Portales again began her rude attitude towards Ary and making negative statements such that we were not doing our work and that she was not going to "lose her house without a fight". She also stated that she will not pay my fees until I gave her a guarantee that I will be able to save her home. After that conversation, Ary was very uncomfortable with the call, and mentioned to me that the way Mrs. Portales was on the phone, that it will be difficult to continue representing her. I agreed. See Exhibit two, "Note Report" dated October 12, 2015

On **Tuesday, October 13, 2015**, I emailed her stating that the law firm will not continue representing her in the modification case and the bankruptcy case. *See Exhibit three, Email dated October 13, 2015.* I decided to not continue representing her because of her overall demeanor and her rude statements she made to Ary that was a carryover from that Friday. I felt that her irrational behavior on Friday and her conversation with Ary on Monday was enough to conclude that I did not want her in my office.

On **Wednesday, October 14, 2015**, six days after I met with Mrs. Portales, she files a police report that I physically assaulted her, after she received my withdraw email the day before. This assault never happened.

If I did assault her, why did she just not leave the office, if she was physically assaulted?
If I did assault her, why did she continue talking to me in the room?
If I did assault her, why didn't she tell Ary or Nurmis while I was in the room or after I left?

Both Ary and Nurmis were present at all times that I was with Mrs. Portales. She made no verbal, physical or action that an assault occurred to Ary, Nurmis, or me. Moreover, if I did assault her, why didn't she go to the police the same day?

She went to the police AFTER I stated I was going to withdraw in my email dated October 13, 2015.

She even stated that the police, six days after the alleged physically assault, asked her regarding a bruise and she stated that there was no bruise, but 10 days later there is a bruise while she is preparing this complaint? And she noticed the bruise while she was trying to make a ponytail?

If she was assaulted, why did she schedule an appointment with me several weeks later the same day of the assault?

If she was assaulted, why did she call my office, spoke with Ary the following Monday being only concerned of payment of my fee?

I can only guess as to why she accused me of assault, and some guesses are obvious.

**2)** The second issue in Cynthia Portales' complaint is my representation. Let me begin with some background information on this property.

BACKGROUND: This foreclosure action, filed by Deutsche Bank, was initiated on May, 2008. This property was purchased on or about November, 2006, and in less than one year (October, 2007), Mrs. Portales stopped paying for the subject property. According to Mrs. Portales, and stated in the initial pleadings of Deutsche Bank, apparently she hasn't paid, since October, 2007 to the present, (approx. 8 years), the regular mortgage payments or successfully complied any with settlements. She did make few payments in the MMM program. This is based upon pleadings filed by Deutsche Bank, 08-27152 CA 02.

From Mrs. Portales' statements to us, and in the pleadings of the foreclosure action, she has used several attorneys for foreclosure defense, as well as modification applications, all of which she terminated their services or have withdrawn from the matter.

From the onset from my first meeting with her, March, 2015, she has been unsatisfied with all of her previous attorneys, so her position as to attorneys wasn't positive. As a matter of fact, Mrs. Portales stated to my staff and myself that we were the first law firm that was able to determine that she was on the note and have the opportunity to modify the loan. This is where she stated that bankruptcy was the proper way to stop the sale, enter the MMM program and attempt to modify the note of her home.

Also, when I first met Mrs. Portales she further stated that she has stopped the sale dates of the property three or four times, and knows how to defend the foreclosure, but the sale date set for April 5, 2015, she saw no other option but file bankruptcy to stop the sale because the judge already had a "no further cancellations" notice on file and there was no pending modification application of her note on the property. She mentioned that she knew how bankruptcy worked since she did one before in 2007, Bankruptcy chapter 7 case, 07-19354.

REASONS WHY FILE BANKRUPTCY: In her complaint, she states that she didn't want to file bankruptcy because she had no debts. She well knew that a bankruptcy filing would stop the set sale. Her intent of filing the bankruptcy was not for discharging any debt she may have had, she wanted to file bankruptcy to stop the sale. She had no other options. She didn't want to lose the house and felt the MMM program was a great option also. Finally, she was aware of the bankruptcy because that is what she retained our firm for. See Exhibits four thru nine these signed demonstrates clearly that we were filing bankruptcy and entering the MMM program. This group exhibit acknowledges disclosures by this law firm, signed by Mrs. Portales.

PAYMENTS MADE TO TRUSTEE: Another point she mentions is that of payments to the Chapter 13 trustee. I have always made it clear to all clients that we do not make up the payments. That one of the few requirements in the MMM program is that the payment to the mortgage is based upon gross income/support of least 31%. That afterwards, this payment may change. No one can predict what banks want as income for each debtor. Each bank and note have different conditions and criteria. One disclosure in particular, signed by Mrs. Portales, states that payments to Chapter 13 Trustee may go up or down, depending on the case. See Exhibit ten and eleven

THAT WE GAVE GUARENTEE TO LEGAL OUTCOME: More importantly, my main contract, signed by Mrs. Portales, states that there are no guarantees in the final outcome of the case. See Exhibit 12 (English contract; Exhibit 13 is same as Spanish contract signed by Mrs. Portales)

I am submitting the first and last page of contract because of 25 page limit, but contract shows her signature along with no guarantee disclosure. Mrs. Portales throughout her complaint, keeps mentioning that I promised her that I misled her in the MMM program. I did not. In all prudence, I have the debtor acknowledge by signing not one, but two disclosures stating that the MMM/loan modifications programs are not guaranteed. Mrs. Portales signed both. See Exhibit 14 and 15

OUR STAFF CONVERSATIONS: Throughout her statements, Mrs. Portales keeps mentioning her conversations with different staff employees, including myself. I do not understand exactly what she is saying, but quite frankly, it is disturbing that a person or client would go this far to make statements that are fabricated. Bottom line, she makes it appear that all of my employees, including myself, are not proficient in their work and do not know what they are doing. Let me expand on that. Let's start with Tania. Tania has been involved with my law practice in its day to day client support. She has been doing this for over 29 years with my firm and others in the past. Lissette, the other employee, has a 4-year bachelor's degree and is in the process of applying for law school. Ary is another excellent employee, who recently was hired by this firm, has been solely concentrating in loan modifications for the last 6 years.

Mrs. Portales refers to a Geisel Sanchez as a legal assistant, who, in her words was a "fluke". No one exists in my office with that name. There is a Giselle Velez, who is a licensed attorney, so I do not know what she is referring to. Another employee, Nurmis, is a certified paralegal and has been involved with real estate law for the past 7 years. I, have been involved with the MMM process since it started. As a matter of fact, we were one of the first ones to file a MMM case in Dade County. Thus, I think the combined law experience of over 70 years, we do have the experience to represent debtors in the bankruptcy and MMM process. We have no gain or incentive to mislead anyone. Everything we did had to go through the Chapter 13 Trustee, the mediator, creditors, attorneys, the Honorable Judge Mark, and the court system.

Her statements in the last couple of paragraphs stating that I filed an undisclosed payment plan is also false. I do not have any idea what she is referring to, and more that I "move to dismiss the unnecessary bankruptcy he filled and falsely created" is also false. As a matter of fact, at the end my email to Mrs. Portales dated October 13, 2015 ( See *Exhibit three*) expressly states that I am withdrawing from her bankruptcy case, but that she can continue with the bankruptcy case without me.

At the end, her bankruptcy case was approved and confirmed by the Court. As to MMM, all documents were submitted timely, the MMM package was created and there was a mediation session held with Nationstar representatives at my office. After the mediation, the bank sent us a letter denying the MMM. It was denied because of several reasons, one main reason was income. *See Exhibit 16 and 17.* As I explained to Mrs. Portales, we can submit her MMM application to 10 different banks, and we will get 10 different responses. She didn't want to hear it, as I explained in my meeting with her on September 23, 2015.

Lastly, as the MMM case, as to Mrs. Portales statements that Ary specifically stated that she will not be able to modify is not true, plus, there was no mention of a $10,000 per month requirement. Ary did explained that the reasons Nationstar gave for the denial is based upon the information given at MMM. If it was possible to get more income, Mrs. Portales may have another opportunity with the bank. Moreover, applying again may give her another chance with Nationstar and they may look and change their position. At times, if there is a change of circumstances in more gross income, the bank may review the new application. In addition, we may be able to negotiate other solutions such as reinstatement, short sale, and other remedies.

I hope this response to the two issues clear up any concerns brought by Mrs. Portales.

I did not commit anything unethical. I stand firmly that my law firm, my staff, and I represented Mrs. Portales' best interests in her attempt to save her home.

If you have any further questions, please let me know.

Sincerely,

Patrick L. Cordero, Esq.,
lp

Cc: Cynthia Portales
16630 SW 140th Avenue
Miami, FL 33177
Sent via regular mail.

The Florida Bar
Attn: William W. Wilhelm, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida  32399-2300
Sent via regular and certified mail: 7010 1870 0001 3380 7983

Filters Used:

# Event Report

Custom List Format

Date Printed: **11/11/2015**
Time Printed: **11:43AM**
Printed By: **ALLYP**

| Date | | Time/Dur | Staff | Code | Status | Came In | Came in on | Reschedule | Description |
|------|------|----------|-------|------|--------|---------|------------|------------|-------------|
| 11/16/2015 | Mon | 4:00PM | AL,PLC | MOD,BNN | | | | | Portales, Cynthia |
| 11/16/2015 | Mon | 4:00PM | PLC,AL | MOD,BNN | | | | | Portales, Cynthia |
| 10/09/2015 | Fri | 4:00PM | Ary Lezcano | MOD,BN | | | 10/09/2015 | | Portales, Cynthia |
| | | 10-8-15 @5:37pm - JL | | | | | | | |
| | | Called to confirm 786-370-5139 - Spoke | | | | | | | |
| 10/02/2015 | Fri | 4:00PM | Ary Lezcano | MOD,BN | | | | 10/09/2015 | Portales, Cynthia |
| | | MMM Denied | | | | | | | |
| | | 10-1-15 @12:33pm - JL | | | | | | | |
| | | Called to confirm  786-370-5139 - Spoke to clt says that she was told that her appt was for the 9th and not the 2nd i reascheduled for the 9th. | | | | | | | |

Exhibit 1

1

Subj:     **legal services**
Date:     10/13/2015 12:00:41 P.M. Eastern Daylight Time
From:     PCBankruptSea@aol.com
To:       vividcc17@yahoo.com

Dear Mrs. Portales,

After speaking with you on Friday, I decided not to continue representing you in your modification file, opened September 23, 2015.  You have not paid a retainer for this file, so I am going to close it.  Your actions upon my staff on Friday, such as screaming and demanding that you will contact the State Attorney's Office and Supreme Court because of our services, were not called for.  If you recall, it was my law firm that stopped the sale of your home, it was my law firm that investigated your file and assisted you in clearing up that you were on the note, after seeking advice from previous numerous law firms, and it my law firm that gave you the opportunity to do mediation with the bank.

That being said, I will have my staff mail you all your papers from your file.  I would of preferred that you come by my office to pick up the papers, but  my staff nor I can trust your actions if you came to my office.

Also, I am withdrawing from your bankruptcy case.  You can continue with the bankruptcy case without my representation.


Good luck,


**Patrick L. Cordero, Esq.**
Law Offices of Patrick L. Cordero, P.A.
198 N.W. 37 Ave
Miami, Florida 33125
p. (305) CORDERO
f. (305) 445-9483
email: PCBankruptSea@aol.com www.attorneycordero.com www.abogadocordero.com


**CONFIDENTIALITY NOTICE: This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, be advised that you have received this email in error and that any use, dissemination, forwarding, printing or copying of this email is strictly prohibited. If you have received this email in error, please immediately notify our office by telephone at (305) 445-4855.**

Exhibit 3

Tuesday, October 13, 2015 AOL: PCBankruptSea

### §527 (a) Notificacion

He acordado conservar a <u>Patrick L. Cordero, P.A.</u> para representarme en la conexión con el caso de bancarrota que se puede archivar a mi favor. Entiendo lo siguiente:

1).    Toda la información que me sea requerida proporcionar con la petición y durante el caso bajo este título debe ser <u>completa, exacta, y verdadera.</u>

(2)    Toda propiedad, asi la posea o no, todos mis bienes y todas mis responsabilidades, se deben declarar totalmente y exactamente en los documentos archivados para comenzar el caso, y debo declarar el valor estimado de cada uno de mis bienes, como esta definido en §506 del código de bancarrota en los documentos archivados donde solicitado después de que haya hecho una investigación razonable para establecer tal valor

(3)    Mi renta mensual actual, mis costos actuales reales (las cantidades especificadas en §707(b)(2)), y, en caso de que bajo Capítulo 13 de este título, todos mis ingresos disponibles (de acuerdo con las cuales sea determinado §707(b)(2)) se deben <u>indicar completamente y exactamente después de que haya hecho</u> la investigación razonable.

4)    Entiendo que esa información que proporciono durante mi caso, puede ser revisado conforme a este título, y la falta de proporcionar información puede dar lugar aldespido del caso bajo este título u otra sanción, incluyendo sanciones criminales. Reconozco que mi abogado me ha explicado completamente estas obligaciones.

CLIENTE _____  FECHA _____

CLIENTE                                  FECHA

SOMOS UNA AGENCIA DE ALIVIO DE DEUDAS. AYUDAMOS A LAS PERSONAS A PRESENTAR PETICIONES DE QUIEBRA CONFORME AL CÓDIGO DE QUIEBRA. Este contrato y el contenido del mismo son propiedad de PLC. El presente documento no puede reproducirse ni copiarse sin el consentimiento por escrito de PLC.

Exhibit 4

## §527 (a) Disclosure

I have agreed to retain <u>Patrick L. Cordero, P.A.</u> to represent me in connection with a bankruptcy case that may be filed on my behalf. I understand the following:

1. All information that I am required to provide with a petition and thereafter during a case under this title must be **complete, accurate, and truthful.**

2. All of my property, whether I possess it or not, and all of my assets and all of my liabilities must be **completely and accurately disclosed** in the documents filed to commence the case, and I must disclose the replacement value of each asset as defined in 506 of the Bankruptcy Code in the documents I file where requested after I have made a reasonable inquiry to establish such value.

3. My current monthly income, my actual living expenses (the amounts specified in 707(b)(2)), and, in a case under Chapter 13 of this title, all of my disposable income (which will be determined in accordance with 707(b)(2)) must be **fully and accurately stated** after I have made reasonable inquiry.

4. I understand that information I provide during my case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including criminal sanctions.

I acknowledge that my attorney has fully explained these obligations to me.

| | |
|---|---|
| _____ | _____ |
| CLIENT | DATE |
| _____ | _____ |
| CLIENT | DATE |

*We are a debt relief agency. We help people file for bankruptcy under the bankruptcy code.*
*This contract and its contents are property of PLC. This document may not be duplicate or copied without the written consent of PLC.*

Exhibit 5
(English copy of Exhibit 4)

527 (b) Disclosure

## IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney.    THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARE WILL DO FOR YOU AND HOW MUCH IT WILL COST.    Ask to see the contract before you hire anyone.

The following information helps you understand what must be done in a routine bankruptcy case to help you evaluate how much service you need.  Although bankruptcy can be complex, many cases are routine.

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you.  Be sure you understand the relief you can obtain and its limitations.  To file a bankruptcy case, documents called a Petition, Schedules, and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court.  You will have to pay a filing fee to the bankruptcy court.  Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a "Trustee" and by creditors.

If you choose to file a Chapter 7 case, you may be asked by a creditor to reaffirm a debt.  You may want help deciding whether to do so.  A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a Chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with preparing your Chapter 13 plan and with the confirmation hearing on your plan which will be before a bankruptcy judge.

If you select any other type of relief under the Bankruptcy Code other than Chapter 7 of Chapter 13, you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation.  You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

_____  
CLIENT

_____  
CLIENT

_____  
DATE

3/26/2015  
_____  
DATE

*We are a debt relief agency. We help people file for bankruptcy under the bankruptcy code.*
*This contract and its contents are property of PLC. This document may not be duplicate or copied without the written consent of PLC*

Exhibit 6

LAW OFFICES OF

# PATRICK L. CORDERO, P.A.

ATTORNEYS AT LAW
198 NW 37th Avenue
Miami, FL 33125

## RECONOCIMIENTO

Yo/Nosotros, _____, reconocemos que el abogado Patrick L. Cordero me/nos ha explicado que hasta que mi/nuestro caso de bancarrota no este registrado en la corte, no podrá detener el curso legal de cualquier demanda que haya recibido o reciba antes del registro de mi caso en la corte. Además reconocemos que los honorarios del abogado y los costos de corte tienen que ser saldados en su totalidad antes que mi/nuestro caso sea presentado en la corte. Entendemos que tenemos la obligación de presentarnos a cualquier cita establecida por la corte civil en referencia a las demandas legales. Por ultimo reconocemos que si mi/nuestro caso de bancarrota no es presentado por cualquier motivo, esto puede traer como consecuencia que mis/nuestros acreedores puedan embargar mi/nuestro sueldo, cuentas bancarias o inclusive reposeer mi/nuestra casa o vehículo.

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

## ACKNOWLEDGMENT

I/We, _Cynthia Portales_ _____, acknowledge that my/our attorney Patrick L. Cordero has explained that my/our pending lawsuit(s) legal process will not stopped until my/our bankruptcy case has been filed. I/We understand that my/our case can not be filed unless my/our attorney's fees and court cost are fully paid. I/We am/are aware that if my/our case is not filed, my/our pending lawsuit(s) will continue its course and it's my/our responsibility to attend any hearings ser by the civil court. I/We also understand that as a consequence of not filing my/our case, the creditors may garnish my/our wages, bank accounts and/or foreclose my/our property and even seize my/our vehicles.

_Cynthia Portales_
Signature/Firma

_4/23/2015_
Date/Fecha

_____
Signature/Firma

_____
Date/Fecha

Exhibit 7

## RECONOCIMIENTO SOBRE CAMBIOS EN MI VIDA

Yo,_____, entiendo que mi abogado, Patrick L. Cordero, me ha explicado que en la consulta inicial el abogado puede recomendar un capítulo 7 o un capítulo 13 de bancarrota. Entiendo que debido a las circunstancias, a las situaciones, o cambios en mi vida (tales como ingresos excesivos, información no revelada o información desconocida) a la hora de presentar mi caso no se podrá proceder con la bancarrota.

Entiendo que si no estimo correctamente mi ingreso o el mismo (incluyendo esposo, novia/novio, miembro de familia que viva en mi casa o cualquier otro miembro que habite en mi hogar) aumenta antes de presentar mi bancarrota, tendré que presentar un capítulo de bancarrota diferente, tal como un capítulo 13, o no podre presentar una bancarrota.

Entiendo que mis propiedades personales sin revelar, las transferencias, o la subestimación del valor de mi propiedad personal, incluyendo el valor o plusvalía acumulado de mi vehículo, pudiese afectar o impedir presentar el capítulo recomendado, y puedo tener la opción de presentar un capítulo 13 o no poder presentar la bancarrota en el tiempo actual.

Yo reconozco que si elijo no presentar mi caso de bancarrota, los honorarios pagados al abogado no son reembolsables. Entiendo que cualquier honorario del abogado pagado está ganado totalmente aunque el caso no haya sido presentado en la corte de bancarrota. Los honorarios de corte no usados serán reembolsados.

## ACKNOWLEDMENT OF CHANGES IN MY LIFE

I/We, _Cydalia Fortales_ , understand that my attorney, Patrick L. Cordero, has explained to me that at the initial consultation the attorney may recommend a Chapter 7 or Chapter 13 filing. I do understand that due to circumstances, issues, or changes in my life (such as income, undisclosed or unknown factors) at the time of filing I will not be able to file bankruptcy.

I further understand that if I under estimate my income or my income (including spouse, girlfriend/boyfriend, live-in family member and /or any other members that live in my household) increases prior to filing, that I may have to file a different chapter of bankruptcy, such as chapter 13, or I may not be able to file at the present time.

I understand that undisclosed assets, transfers, or underestimating value of assets, including the value or equity of my vehicle, may affect me filing the recommended chapter, and I may have to file a chapter 13, or may not be able to file present time.

I further acknowledge that if I choose not to file, that any attorney fees are non-refundable. I understand that any attorney fees paid are earned completely regardless if the case if filed of not. Unused court fees will be returned.

_____        _4/23/2015_
Client/ Cliente                                           Date/Fecha


_____        _____
Joint Client/ Cliente Conjunto                Date/Fecha

Exhibit 8



_____LAW OFFICES OF_____

# PATRICK L. CORDERO, P.A.
_____ATTORNEYS AT LAW_____

198 NW 37TH AVE
MIAMI, FL 33125
TELEPHONE: (305) 445-4855
TELEFAX: (305) 873-6232

## IMPORTANT REQUIREMENT

Dear Client:

   While the Loan Modification Mediation Program has many benefits to help you attempt to keep you home, please understand that your cooperation along the process is of extreme importance. In order to make this last opportunity to keep your home count you MUST continue to provide the following updated documents for all the months between the filing of your bankruptcy case up to the month preceding your Mediation:

- Bank Statements for all bank accounts;
- Paystubs; and/or
- Profit and Loss (if you are self-employed or own a business).

> DOCUMENTS MUST BE EMAILED TO Stephaniep@pcorderolaw.com and MUST include your bankruptcy case number and your last name in the subject line!!!!

## Failure to provide updated documents will result in the denial of your modification!

   If you have any questions, do not hesitate to contact our office.

   It is a pleasure to be of service to you. Thank you.

I/We _____, understand my duties and responsibilities in providing the necessary documents and to continually cooperate in making this modification mediation process flow properly.

Exhibit 9

# PATRICK L. CORDERO, P.A.

_____ATTORNEYS AT LAW_____

198 NW 37TH AVENUE
MIAMI, FL 33125

TELEPHONE: (305) 445-4855
TELEFAX: (305) 445-9483

## ACKNOWLEDGEMENT

Date: 4|23|15

I/We. Cynthia Portales _____, acknowledge that my attorney Patrick L. Cordero has explained to me/us that my monthly payments to the Court in the amount of $ 157.08 is a proposal made upon the Trustee. I/We understand that the Trustee can recommend to lower or increase my/our monthly payments and may also shorten or extend the amount of months on the plan. If in my best interest, Patrick Cordero has to adjust my payment, I give him authorization to do so with or without my immediate knowledge, so long as I am notified of this change within a reasonable time.

_____
Debtor Name

_____
Joint Debtor Name

_____
Debtor Signature

_____
Joint Debtor Signature

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Fecha:_____

Por medio de la presente yo/nosotros _____ hago/hagamos saber que el abogado Patrick L. Cordero me/nos explico que mis/nos pagos mensuales a la corte de $_____ es una propuesta que se le hace a la corte. Yo/Nosotros entiendo/entendemos que la corte puede recommendar subir o bajar la mensualidad de mis/nuestro pagos y el termino. Tomando en consideracion lo mas beneficioso para mi caso, si mis pagos tienen que ser ajustado, le doy autorizacion al licenciado Patrick Cordero de hacerlo con o sin mi immediato consentimiento, siempre y cuando sea notificado de este cambio lo mas antes posible.

_____
Firma del Debtor

_____
Firma del Co-Debtor

_____
Nombre del Debtor

_____
Nombre del Co-Debtor

Exhibit 10

DADE COUNTY CASES
CHAPTER 13 VOLUNTARY BANKRUPTCY PETITION

**DEBTOR'S PAYMENTS**

The Debtor is required to make plan payments $1527.68 for 60 months, to the Trustee pursuant to the proposed Chapter 13 Plan, as may be amended, commencing not later that 30 days from the petition date 4|23|15 (and not from the date the plan is filed). In accordance with the directions of the Judges of the U.S. Bankruptcy Court for the Southern District of Florida. See 11 U.S.C. Section 1326 (a). The debtor's attorney is to inform the debtor with respect to the above-described requirement.

Your first payment is due on 5|23|15, and will be due on the same day of every following month. If your payments are amended, you have to current and may have to make up the difference to cover the shortages from the previous monthly payments.

**ALL PAYMENTS TO THE TRUSTEE ARE TO BE MADE BY CASHIER'S CHECK OR MONEY ORDER ONLY TO:**

NANCY K. NEIDICH, TRUSTEE

ALL PAYMENTS TO THE TRUSTEE ARE TO MAILED TO:

NANCY K. NEIDICH, TRUSTEE
STANDING CHAPTER 13 TRUSTEE
P.O. BOX 2099
MEMPHIS, TN 38101-2099

WARNING!!!!!!!!!!!    1. YOU NEED TO PUT YOUR CASE NUMBER ON CASHIER'S CHECK OR MONEY ORDER.

CASE NO.: 15-7331-BKC- RAM

2. PERSONAL CHECKS OR CASH WILL NOT BE ACCEPTED.

*********************************************************************************************

I understand that my payments to the trustee begin 30 days after my case has bee submitted to court.

| | |
|---|---|
| BS Processor | 4|23|2015 <br> Date |
| Debtor | |
| Attorney | Joint Debtor |

Exhibit 11

CONVENIO DE PAGO ANTICIPADO DE HONORARIOS LEGALES

I.    PARTES

El presente Convenio se lleva a cabo al (a los) __26__ día(s) del mes de __MARch__ de 20 15 entre el bufete de Patrick L. Cordero, PA (PLC) y usted, el Cliente (el término "Cliente" o "del Cliente", cuando se use en este documento en lo adelante, se referirá al Cliente, así como a cualquier cliente conjunto). La dirección de PLC es 198 NW 37th Avenue, Miami, FL 33125. La información actual del Cliente es:

NOMBRE DEL CLIENTE:                        Cynthia Portales
NOMBRE DEL CLIENTE CONJUNTO:    _____
DIRECCIÓN RESIDENCIAL FÍSICA:      _____
CIUDAD, ESTADO Y CÓDIGO POSTAL: _____

Es obligación exclusiva del Cliente mantener, en todo momento, una dirección y un número de teléfono vigente actualizados durante la representación del Cliente.

El presente Convenio tiene por objeto contratar los servicios de PLC en calidad de abogado del Cliente, a fin de asesorar y aconsejar al Cliente con respecto a cuestiones relacionadas con deudas, reorganización de deudas, incluyendo un posible recurso de quiebra y, de ser pertinente, representar al Cliente en los procedimientos de quiebra del Capítulo 7 o 13. PLC conviene en hacer uso de sus mejores esfuerzos y capacidades para representar al Cliente en tales procedimientos.

II.    HONORARIOS DE ABOGADOS

El Cliente conviene en pagarle a PLC los honorarios de abogados indicados en el presente, y entiende que dichos honorarios constituyen un estimado basado en las representaciones e información que el Cliente le ha proporcionado a PLC durante la consulta y/o en la Hoja Inicial del Cliente, y que éstos pudieran aumentarse debido a diversos factores: (i) servicios requeridos más allá de los Servicios Básicos que se definen en el presente; (ii) preferencias, traspasos, ingresos y bienes no revelados; (iii) existencia de más de 40 acreedores; (iv) otras deudas no aseguradas que sobrepasen en $10,000 las anteriormente reveladas; y (v) acontecimientos posteriores a la firma del contrato, tales como demandas, etc.

El Cliente conviene en pagarle a PLC honorarios de abogados por la suma de $ 1700 , más las costas procesales, el informe de crédito y/o la verificación de bienes; además, si se presentara un caso bajo el Capítulo 13, el total de honorarios será de $ 6250 , cuya diferencia se pagará a través del plan bajo el Capítulo 13, salvo se indique lo contrario, de la siguiente manera:

Si el Cliente decidiera presentar un caso bajo el Capítulo 13, y que dicho caso se desestimara por cualquier motivo, el saldo restante de los honorarios, de haberlo, quedará vencido y pagadero por parte del Cliente. Si el Cliente no pagara el saldo dentro de un plazo de diez (10) días, a partir de la fecha de desestimación, PLC se reserva el derecho a contratar sus propios abogados para cobrar tales honorarios. El Cliente conviene en que, si el caso de quiebra se convirtiera en un caso bajo el Capítulo 7, el Cliente será responsable de pagar honorarios de abogados adicionales por servicios que PLC preste en relación con el Capítulo 7. Si el Cliente optara por hacer la conversión antes descrita, deberá firmarse un nuevo Convenio de Pago Anticipado de Honorarios. De efectuarse dicha conversión, cualesquiera honorarios adeudados conforme al presente Convenio podrán ser cobrados de los fondos pagados al Fiduciario bajo el Capítulo 13, pero éstos no podrán sobrepasar la suma combinada de los honorarios acordados para los dos (2) Convenios.

Se da por acordado que cualesquiera honorarios de abogados que se paguen, incluyendo los de pago anticipado y los que se abonen antes de presentar el caso, no son reembolsables ni transferibles. El Cliente entiende y reconoce que los honorarios devengados no están sujetos a que se presente la petición. Si el Cliente decide no continuar con el caso, o bien mudarse fuera del condado de Miami-Dade o Broward, o si

1                                    Client(s) Initials_____

SOMOS UNA AGENCIA DE ALIVIO DE DEUDAS. AYUDAMOS A LAS PERSONAS A PRESENTAR PETICIONES DE QUIEBRA CONFORME AL CÓDIGO DE QUIEBRA. Este contrato y el contenido del mismo son propiedad de PLC. El presente documento no puede reproducirse ni coplarse sin el consentimiento por escrito de PLC.

Exhibit 12

o Cargos de almacenamiento de caso cerrado o descargado. Una vez sobreseido o descargado el caso del Cliente, su expediente se enviará a un almacén externo, donde se conservará por un período de un (1) año, después del cual el Cliente está de acuerdo en que se destruyan el expediente y el contenido del mismo. Si el Cliente solicitara alguna información contenida en el mismo, éste será responsable del pago previo de un cargo por recuperación de no menos de $65, antes de que PLC solicite la extracción del expediente del almacén. El Cliente será responsable de pagar todos los costos de copia del expediente, los cuales también deberán abonarse previamente.

## XIII.    RECIBO DE INFORMACIONES Y AVISOS OBLIGATORIOS

La Ley de Prevención del Abuso de Quiebra y Protección al Consumidor de 2005 requiere que PLC envíe informaciones y avisos obligatorios al Cliente. La firma del Cliente en este contrato servirá para acusar recibo de tales documentos, y el Cliente por el presente declara que ha recibido, leído y entendido los documentos titulados (a) Información §527 y (b) Información §527.

## XIV.    NO SE OFRECEN GARANTÍAS

PLC prestará servicios diligentes, minuciosos y competentes, y en todo momento procurará lograr soluciones justas y razonables para el Cliente. No obstante, el Cliente entiende que PLC NO garantiza ningún resultado, ya que los procedimientos legales son inciertos, y que existen diversas interpretaciones, cambios recientes en la legislación y factores desconocidos que pudieran alterar el desenlace de su caso. El Cliente reconoce que NO SE GARANTIZAN el éxito de la presentación de su caso de quiebra, ni la impugnación de ningún procedimiento contencioso ni de ninguna petición de desestimación, y que, de hecho, existen riesgos considerables si un Fiduciario o Acreedor obtuviera una sentencia favorable en cualquier acción.

## XV.    TOTALIDAD DEL CONVENIO

La totalidad del contrato entre PLC y el Cliente está contenido en el presente instrumento. Ambos están de acuerdo con la totalidad de los términos y condiciones estipulados en el presente, y reconocen que han leído y entendido este convenio.

_____          ___3/26/2015___
Cliente                                             Cliente

_____
Patrick L. Cordero, PA ("PLC")

9                    Client(s) Initials_____

SOMOS UNA AGENCIA DE ALIVIO DE DEUDAS. AYUDAMOS A LAS PERSONAS A PRESENTAR PETICIONES DE QUIEBRA CONFORME AL CÓDIGO DE QUIEBRA. Este contrato y el contenido del mismo son propiedad de PLC. El presente documento no puede reproducirse ni copiarse sin el consentimiento por escrito de PLC.

# LEGAL RETAINER AGREEMENT

## I.    PARTIES

This Agreement is made on this _____ day of_____, 20_____ between The Law Offices Patrick L. Cordero, PA (PLC) and you, the Client (the word "Client" or Client's" when used in this document hereinafter shall refer to the client as well as any joint client). The address of PLC is 198 NW 37th Avenue, Miami, FL 33125. Client's current information is:

CLIENT NAME :                _____
JOINT CLIENT NAME:           _____
PHYSICAL RESIDENT ADDRESS:   _____
CITY, STATE & ZIP CODE:         _____

It is the sole obligation of the client to maintain a current address and working phone number at all times during the representation of the client.

This Agreement is intended to retain PLC as Client's attorney to consult and advise Client on matters relating to debt, debt reorganization, including possible bankruptcy relief, and if appropriate, represent Client in Chapter 7 or 13 Bankruptcy proceedings. PLC agrees to use its best efforts and abilities in representing Client in any such proceedings.

## II.    ATTORNEY'S FEES

Client agrees to pay PLC the Attorneys Fees quoted herein and understands that the fee is an estimate based on the representations and information provided by Client to PLC at the consultation and or the Client Opening Sheet and may be adjusted upwards by several factors: (i) required services beyond the Basic Services defined herein; (ii) undisclosed assets, income, transfers and preferences; (iii) creditors exceeding 40 in number; (iv) additional unsecured debt in excess of $10,000 than previously disclosed; and (v) events occurring after the execution of the contract, such as lawsuits, etc.

Client agrees to pay PLC attorneys fees of $_____ plus court costs, credit report, and/or asset check, and in the case a Chapter 13 case is filed, the total fee will be $_____ of which the difference will be paid through the Chapter 13 plan unless otherwise noted, as follows:

In the event Client elects to file a Chapter 13 case and that case is dismissed for any reason, the remaining fee balance, if any shall be due and payable by Client. Should Client fail to pay the fee balance within ten (10) days of dismissal, PLC reserves the right to retain its own attorneys to collect the fee. Client agrees that in the event that the bankruptcy case is converted to a case under Chapter 7, Client shall be responsible for additional attorneys fees for services PLC will provide that relates to Chapter 7. If Client chooses to convert as described above, a new Retainer Agreement will be executed. In the event of conversion, any fees due under this Agreement may be collected from funds paid to the Chapter 13 Trustee, but will not exceed the combined agreed fees for the two (2) Agreements.

It is agreed that any attorneys fees paid, including retainer fees or fees paid prior filing are non-refundable and non-transferable. Client understands and acknowledges that the fee earned is not contingent on the petition being filed. Should Client decide not to continue with the case, or move out of Miami-Dade or Broward County, or if the file is closed due to inactivity for a period exceeding six (6) months, the fee is non refundable. If undisclosed information or issues, which are relevant to their case, were not disclosed to PLC, such as real estate properties (in the U.S. or abroad) or forgotten accounts, transfers of property (known or unknown to the Client) and it is determined that this information will affect the case to the extent that PLC's representation will not be consistent with the representation afforded at the onset of the case, PLC reserves the right to withdraw its representation, close the file and any fees paid remain non-refundable. Client understands that PLC performs services which may or may not involve paperwork, and its time and effort is considered when a fee is earned. If Client does not wish to continue with the case, or does not follow through with the case within six (6) months of retaining PLC, Client agrees and acknowledges that the file will be

1

Client(s) Initials_____

WE ARE A DEBT RELIEF AGENCY. WE HELP PEOPLE FILE FOR BANKRUPTCY RELIEF UNDER THE BANKRUPTCY CODE. This contract and its contents are property of PLC. This document may not be duplicated or copied without the written consent of PLC.

Exhibit 13
(English copy of Exhibit 12)

## XIV.    NO GUARANTEES

PLC will provide conscientious, competent and diligent services and at all times will seek to achieve solutions that are just and reasonable for the Client. However, Client understands that PLC does NOT guarantee results because legal proceedings are uncertain, and there are various interpretations, recent changes in the law and unknown factors that may alter the outcome of your case. Client acknowledges that there is NO GUARANTEE to the successful filing of the Client's bankruptcy case, the defense of any motion to dismiss or adversary and that there are in fact, significant risks if a Trustee or Creditor prevails in any action.

## XV.    ENTIRE AGREEMENT

The entire contract between PLC and Client is contained in this instrument. Both agree to all of the terms and conditions set forth herein and acknowledge that both have read and understand this agreement.

_____          _____
Client                                                          Client

_____
Patrick L. Cordero, PA ("PLC")

8                          Client(s) Initials_____

WE ARE A DEBT RELIEF AGENCY. WE HELP PEOPLE FILE FOR BANKRUPTCY RELIEF UNDER THE BANKRUPTCY CODE. This contract and its contents are property of PLC. This document may not be duplicated or copied without the written consent of PLC.

_____LAW OFFICES OF_____
PATRICK L. CORDERO, P.A.
_____ATTORNEYS AT LAW_____

Name: _Cynthia Portales_____

Case No.: _____

Property Address: _16630 S. W 140 AVE, Miami, Fl 33177_

## LOAN MODIFICATION GUARANTEES ACKNOWLEDGMENT

I/We, _Cynthia Portales_____, acknowledge that as per my request, The Law Offices of Patrick Cordero, P.A. (hereinafter the "Firm"), will submit my application for loan modification to my loan servicer/lender. I have been duly informed that my application may not be approved, as the lender has the sole right, authority, and discretion to modify a loan. While the Firm acts with my best interests at heart, **a permanent loan modification cannot be guaranteed.** In the event that my loan modification is approved and I agree to the terms therein, I acknowledge that I have accepted said modification voluntarily and will hold the Firm harmless for any subsequent issues that may arise as a result.

| _Cynthia Portales_ | _Cynthia Portales_ | _1/13/2015_ |
|---|---|---|
| Signature | Print Name | Date |

| _____ | _____ | _____ |
|---|---|---|
| Signature | Print Name | Date |

## RECONOCIMIENTO DE GARANTIAS DE MODIFICACION DE PRESTAMO

Yo/Nosotros, _____, bajo mi pedido, entiendo que The Law Offices of Patrick Cordero, P.A. (la "Firma"), presentará mi solicitud de modificación de préstamo a mi prestamista. He sido informado de que mi solicitud puede ser denegada, ya que solamente el prestamista tiene el derecho exclusivo, autoridad y discreción para modificar un préstamo. Mientras que la Firma actúa en mi mejor interés, **una modificación de préstamo permanente no puede ser garantizada.** En el caso de que mi modificación de préstamo sea aprobada y yo esté de acuerdo con los términos de esta, reconozco que he aceptado dicha modificación voluntariamente y no haré responsable a la Firma por cualquier consecuencia que pudiera surgir a raíz de esto.

| _____ | _____ | _____ |
|---|---|---|
| Firma | Nombre | Fecha |

| _____ | _____ | _____ |
|---|---|---|
| Firma | Nombre | Fecha |

Exhibit 14

## LMM Loss Mediation Mitigation Acknowledgment

I / We _Cynthia Portals_ understand that if I go into the program, LMM (loss mitigation mediation) there is no guarantees of the result. I/we also understand that this program has been explained to us and understand how it works. I/we understand that this program is another method of trying to resolve or reach a decision regarding my property or properties. Resolutions include, but are not limited to, mediation, modification, deed in lieu of foreclosure and short sale. I understand that a resolution may be to give up the properties. I/we also acknowledge that if there is no agreement that the property in question may be foreclosed or have other negative results. Finally, I understand that there are other costs and fees in presenting this program in my bankruptcy.

_____                    _____
Signature                                         Date

_Cynthia Portales_                                  3/26/2015
Signature                                         Date

*********************************************************************************

## Reconocimiento de LMM (Mediación de Mitigación de Pérdidas)

Yo/ nosotros _____ entiendo/entendemos que si participo/participamos en el programa LMM (mediación de mitigación de pérdidas) el resultado no es garantizado. También reconozco/reconocemos que este programa se nos ha explicado y entendemos cómo funciona. Entiendo/entendemos que este programa es otro método de tratar de resolver o llegar a una resolución con respecto a mi propiedad o propiedades. Resoluciones incluyen, pero no se limitan a, mediación, modificación, escritura en lugar de ejecución hipotecaria o "Short Sale". Entiendo que una resolución puede ser entregar la(s) propiedad(es). También entiendo/entendemos que si no hay acuerdo, la propiedad en cuestión puede ser perdida en ejecución hipotecaria o tener otros resultados negativos. Por último, entiendo/entendemos que hay otros costos y honorarios en la presentación de este programa en mi bancarrota.

_____                    _____
Signature                                         Date

_____                    _____
Signature                                         Date

Exhibit 15

Copy


**Nationstar**
MORTGAGE

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
P.O BOX 619063
DALLAS, TX 75261-9063

7-692-32371-0000114-001-100-000-000-000

PATRICK L CORDERO ESQ
198 NW 37 AVE
MIAMI FL 33125

August 15, 2015

Re: Loan Number:      0609864384
    Case#:            1517331, CYNTHIA      PORTALES
    Property Address: 16630 SW 140TH AVE
                      MIAMI FL 33177

Dear Patrick L Cordero Esq:

This letter is to inform you that we have reviewed your client's request for assistance and are unable to grant their request at this time. The reasons we could not approve your client for assistance are listed below:

## Loss Mitigation Options

Your client was evaluated and reviewed for the below referenced Loss Mitigation Options, but was declined for the following program(s):

HAMP Tier I - Declined

    Denial Reason: Excessive Forbearance
    We are unable to offer you a modification because we are unable to create an affordable payment without changing the terms of your loan beyond the requirements of the program.

HAMP Tier II - Declined

    Denial Reason: POST-Modification DTI Outside Acceptable Range
    We are unable to offer you a modification because in performing our underwriting of a potential modification your proposed modified monthly payment which we could offer you, which includes a modified monthly principal and interest payment on your first lien mortgage loan plus property taxes, hazard insurance premiums, and homeowners dues (if any) was less than 10% OR more than 55% of your monthly gross income. If you believe this verified income is incorrect, please contact us at the number provided below.

Standard Modification - Declined

    Denial Reason: Negative Disposable Income
    We are unable to offer you a modification because after reducing your payment within the program terms your disposable income is still negative.

There are other possible alternatives that may be available to your client:

Reinstatement – if your client is currently delinquent in your client's payments, your client may be able to reinstate the loan. Please contact your client's Dedicated Loan Specialist for information on this option.

Deed-in-lieu – a borrower voluntarily transfers title to and possession of the property to Nationstar to satisfy the mortgage loan debt and avoid foreclosure.

Pre-Foreclosure Sale/Short sale – a property is listed for sale and proceeds of the sale are accepted in exchange for a release of the lien, even if those proceeds are less than the amount owed.

Exhibit 16

DNALB_0913


EQUAL HOUSING
LENDER

Copy

If you have any questions regarding the denial of your client's request or wish to pursue alternatives, your Dedicated Loan Specialist is Clarence Johnson, and can be reached at (877) 782-7612 EXT. 4263369, Monday-Friday, 8 a.m. to 7 p.m. (CT) and Saturday, 8 a.m. to 12 p.m. (CT) or via mail at Nationstar Mortgage LLC, P.O. Box 619097 Dallas, TX 75261-9741, or email us at customerrelationsofficer@nationstarmail.com. Visit us on the web at MyNationstar.com for further clarification of possible alternatives.

If this is your client's first complete application for a modification of a loan secured by the primary residence, your client has the right to appeal non-approval for a modification or to discuss loss mitigation options that may be available to your client within 30 calendar days from the date of this notice. The appeal must be in writing and sent to the mailing address below. Please specify the basis for your client's dispute, and include any documentation your client believes is relevant to the appeal, such as property valuation or proof of income.

> Nationstar Mortgage LLC
> Attn: Customer Relations
> P.O. Box 619098
> Dallas, TX 75261-9741

Sincerely,

Nationstar Mortgage LLC

Please note the following:

A third-party appraisal or other written valuation was developed in connection with your client's application for loss mitigation. A copy of that evaluation should have been forwarded to your mailing address. If you did not receive a copy, please contact us directly to request an additional copy.

Additional Disclosures

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

* Not available means this program was not considered due to an eligibility requirement or requirements not met.

Exhibit 17


EQUAL HOUSING
LENDER